JAMES K. O. SHERWOOD, RECEIVER, vs. NEW ENGLAND KNITTING COMPANY ET AL.

First Judicial District, Hartford, January Term, 1897. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

In this State a writ of prohibition against an inferior court should issue only when it is clear that such tribunal has exceeded its jurisdiction.

The defendant had caused the plaintiff, a receiver, to be temporarily enjoined by the Court of Common Pleas, without having obtained permission to sue him from the Superior Court, by whom he was in fact appointed, as subsequently appeared; and upon this ground the receiver applied for a writ of prohibition. *Held* that the Court of Common Pleas had not clearly exceeded its jurisdiction, since the property affected by the suit against the receiver was, apparently, never owned by the corporation for which he was acting; while the receiver, so far as then appeared, might have been appointed by a United States court, and therefore liable to suit without the consent of the appointing court.

[Argued January 14th—decided February 23d, 1897.]

APPLICATION for a writ of prohibition, made to the *Hon. John M. Thayer*, a judge of the Superior Court, in vacation; facts found and judgment rendered dismissing the application, and appeal by the plaintiff for alleged errors in the rulings of the judge. *No error.*

This was an application to a judge of the Superior Court, in vacation, to issue a writ of prohibition against the Court of Common Pleas in Litchfield County, and Arthur D. Warner, the judge of that court. The application stated that the New England Knitting Company, a corporation located in Winchester in said Litchfield County, on the 3d day of August, 1896, brought a certain action by complaint against James K. O. Sherwood, describing him as the receiver of the Philadelphia, Reading & New England Railroad Company, in this State, returnable to the said Court of Common Pleas on the 1st Tuesday of September, 1896, in which complaint it was alleged that the defendant therein — the present plaintiff—threatened and intended to cut certain telephone connections belonging to the said New England Knitting Company, to its irreparable injury; and claimed damages and an injunction. It also alleged that upon this complaint, duly verified by affidavit, the said Arthur D. Warner, judge of said court, issued an interlocutory order of injunction, commanding and enjoining the said Sherwood not to cut the said telephone connections, until the return day of the said complaint and until the said court should make further order in the premises. That complaint and order was duly served on the said Sherwood, and he thereupon made the present application.

The judge of the Superior Court made an order of notice requiring the said Knitting Company and the said *Judge Warner* to appear before him on a day named and show cause why a writ of prohibition should not be issued against them, as prayed for in said application. On the day so named the Knitting Company appeared (*Judge Warner* did not appear) before the judge of the Superior Court and pleaded that the writ of prohibition prayed for ought not to be granted, for these reasons: 1st, because the allegations contained in said application were untrue; 2d, because the facts alleged were not sufficient in the law to warrant the granting of the writ; 3d, that upon the facts stated the writ of prohibition was not the proper and appropriate remedy for the wrong complained of; and 4th, because in issuing the injunc-

tion, order and citation recited in the plaintiff's application, the said Arthur D. Warner, acting as judge of the Court of Common Pleas within and for Litchfield County, did not exceed the jurisdiction of said court and his own jurisdiction as judge thereof, but properly and lawfully took cognizance of said prayer of the New England Knitting Company asking that said receiver, his servants etc., be restrained by injunction from inflicting irreparable injury upon the New England Knitting Company by the commission of the threatened illegal, unlawful and tortious acts set forth in the complaint addressed to said Warner as judge, and upon which complaint the injunction in question was issued.

The judge of the Superior Court discharged the rule to show cause, and dismissed the application.

The finding of facts is as follows: "This cause originated in a complaint brought by James K. O. Sherwood, receiver of the P., R. & N. E. R. R. Co., dated August 6th, 1896, to me, a judge of the Superior Court of the State of Connecticut, the Superior Court for the county of Hartford being in vacation, on which an order was granted requiring Arthur D. Warner, judge of the Court of Common Pleas for Litchfield County, to show cause before me at Hartford, on August 31st, 1896, why a writ of prohibition should not be granted as prayed for in said complaint.

" To said complaint and order, plea was filed by said New England Knitting Company, which said plea, in the first paragraph thereof, alleged that the allegations of the complaint were untrue, and in subsequent paragraphs alleged the insufficiency of the facts set up in the complaint as ground for a writ of prohibition.

" Arthur D. Warner, respondent, made no appearance and filed no plea to said complaint and order.

" On the return of said order to show cause, the facts as alleged in the complaint were admitted by counsel for said New England Knitting Company, and I find the same to be in all respects true.

" Counsel for the appellant claimed, as matter of law, that on said facts said writ of prohibition ought to be granted,

but, for the reasons set forth in the memorandum of decision, the application was dismissed."

The memorandum of decision so referred to, says : " It seems clear to me that application could have been made to the Court of Common Pleas to dismiss the complaint and dissolve the injunction in the suit brought against the receiver, for want of jurisdiction, without acknowledging that the court had jurisdiction of the proceedings. This was not done. I think it should have been done, because the judge who granted the injunction may have signed it in the belief that the receiver was an officer of the United States Court, and not of the Superior Court, in which case he would have jurisdiction. If, after such application, the judge should refuse to dissolve the injunction, or the plaintiff refuse to discontinue the action, contempt proceedings would seem to be the proper mode of action against them. I think that the writ prayed for ought not to issue, and the application is dismissed with costs, if any, to respondents."

The applicant, Sherwood, appealed to this court.

*Arthur L. Shipman*, for the appellant (plaintiff).

The receiver was an arm of the Superior court, and this process against him was in fact against the Superior Court itself. *Links* v. *Conn. River Banking Co.*, 66 Conn. 283 ; *Brooks* v. *Hartford*, 61 id. 112. A writ of prohibition under our statute differs from the writ at common law. Gen. Stats., §§ 1294, 1299, 1300 ; 8 Col. Rec. 360 ; Rev. of 1750, p. 195 ; Rev. of 1821, p. 314. The Federal Act authorizing suits against receivers in federal courts, does not authorize injunctions against their acts as receivers. *Dillingham* v. *Hawk*, 60 Fed. Rep. 494 ; *Comer* v. *Felton*, 61 id. 731. No plea to the jurisdiction below was necessary. *State* v. *Wilcox*, 24 Minn. 146.

*William C. Case*, for the appellees (defendants).

The plaintiff should have moved for a dissolution of the injunction in the Court of Common Pleas. High on Ex. Rem., §§ 765, 766, 773 ; *Fayerweather* v. *Monson*, 61 Conn.

431. The proposition of the defendant is a very sweeping one, very serious and dangerous in its consequences. It is this : If a receiver threatens to commit a tort by which irreparable injury is to be inflicted, he cannot be restrained until, by application to a judge of the Superior Court which appointed him, leave is granted to commence injunction proceedings. Meanwhile, the threatened act is committed and the threatened irreparable injury has been consummated, and there is no remedy whatever. Beach on Rec., § 660; *Hills* v. *Parker*, 111 Mass. 508; *Gutsch* v. *Millhangry*, 69 Mich. 377 ; Gluck & Becker, Receivers of Corp. (1896), § 87, pp. 454–456 ; *Kenney* v. *Ranney*, 96 Mich. 617 ; *Staples* v. *May*, 17 Cal. 178.

ANDREWS, C. J. Bacon's Abridgment, volume five, at p. 646, says : " As all external jurisdiction . . . is derived from the crown, and the administration of justice is committed to a great variety of courts, hence it hath been the care of the crown, that these courts keep within the limits and bounds of their several jurisdictions prescribed them by the laws and statutes of the realm. And for this purpose the writ of prohibition was framed . . . The object of prohibition in general is, the preservation of the right of the king's crown and courts, and the ease and quiet of the subject. For it is the wisdom and policy of the law, to suppose both best preserved when everything runs in its right channel, according to the original jurisdiction of every court ; for by the same reason that one court might be allowed to encroach, another might; which would produce nothing but confusion and disorder in the administration of justice." And the book cites for the correctness of the rules stated, authorities as ancient as the time of Edward I., and others coming down to recent times.

The necessity for some means by which each court might be required to confine itself within its own jurisdiction, was early presented to the people of the Colony of Connecticut. In 1740 the legislature of the Colony provided for the issuing of writs of prohibition by the Superior Court, or by any two of

the assisting judges thereof, to any other court held within the colony that " do exceed their jurisdiction, or do hold plea of any matter, cause or thing, whereof by law such court hath no jurisdiction ; " and provided that the Superior Court might in such cases " proceed and give judgment . . . according to the course of the common or statute law, . . . as fully absolutely and entirely as the court of *King's Bench*, in that part of Great Britain called England, by law may do." 8 Col. Rec. 360, 361. This Act was modified in 1750, by inserting in the clause respecting the exceeding of jurisdiction, the words " whereby the person or persons suggesting are grieved." In 1776, the Colony having achieved independence, the reference to the court of King's Bench in England was omitted. In 1821 the statute concerning the writ of prohibition was revised—Revision of 1821, p. 314 —and as thus revised it has, in substance, continued to this time, and is now § 1299 of the General Statutes. Whatever authority the Superior Court or a judge of that court now has to issue a writ of prohibition, comes from the last named section. But the full scope and meaning of that statute is only to be known by considering the history of legislation concerning the writ. This history teaches that the Connecticut writ of prohibition is only a slight modification of the common law writ. 1 Swift's System, 97, 98 ; 1 Swift's Dig., p. 565.

Notwithstanding the full authority so given to the Superior Court to grant writs of prohibition, an application for that remedy seems never to have been made until within a very few years. Our reports show only one case—and that in the year 1891— in which such a writ was actually granted. *Fayerweather* v. *Monson*, 61 Conn. 431. In a prior case in 1882 the writ had been denied. *La Croix* v. *County Com'rs*, 50 id. 321. Non-action may be as significant in determining the law as is action, and after this long period of time it must be held to be the established law in this State, that while the power of the Superior Court is ample to issue the writ of prohibition upon proper and necessary occasions, yet it will never do so except in a clear case of excess of jurisdiction.

It is a prerogative writ, to be used with great caution and forbearance, for the furtherance of justice and for securing order and regularity in all the tribunals where there is no other regular and ordinary remedy. 1 Swift's Dig. 563, 565; *Washburn* v. *Phillips*, 2 Met. 296; *People* v. *Seward*, 7 Wend. 518; *State* v. *Wakely*, 2 Nott & M. (S. Car.) 410. The case decided in our own reports shows that in a clear instance of excess of jurisdiction, by which the party complaining is aggrieved, if there is no other adequate remedy in the ordinary course of procedure, it is the duty of the court to issue the writ. And in this respect we think the decision is in accordance with the law elsewhere. *Mayor, etc., of London* v. *Cox*, L. R. 2 H. L. 239, 278; *Burder* v. *Veley*, 12 Ad. & E. 233, 263; Shortt on Prohibition, 458; High, Ex. Rem., § 767. It is obvious from the nature and purpose of the writ, as shown by the common law as well as by our own statutes and usage, that it is only to be interposed in a clear case of excess of jurisdiction on the part of some judicial tribunal.

The only reason on which it is claimed that the Court of Common Pleas did not have jurisdiction of the suit brought by the New England Knitting Company, is that the defendant is described as a receiver, and that the suit was brought without having obtained permission of the court by which he was appointed. The Court of Common Pleas did have jurisdiction of the subject-matter of the action and of the parties, apart from the question of the defendant being a receiver. But a receiver is not exempt from being sued in all cases and under all circumstances. "The decree of a court of chancery appointing a receiver, entitles him to its protection only in the possession of property which he is authorized or directed by the decree to take possession of. When he assumes to take or hold possession of property not embraced in the decree appointing him, and to which the debtor never had any title, he is not acting as the officer or representative of the court of chancery, but is a mere trespasser, and the rightful owner of the property may sue him in any appropriate form of action for damages, or to recover possession of

the property illegally taken or detained." *Hills* v. *Parker,* 111 Mass. 508, 511.

In the suit brought by the Knitting Company it is evident that the plaintiff therein claimed that the property concerning which the suit was brought, had never belonged to the corporation for which the defendant was receiver.

Moreover, if the receiver had been appointed by any court of the United States, the suit—and the injunction is only an incident of the suit—might properly have been brought against him without any such consent. U. S. Statutes of 1887, Chap. 373, § 3. The judge of the Superior Court was of opinion that the Court of Common Pleas acted in the belief that the receiver was appointed by a United States court. These grounds were sufficient to warrant the judge in refusing to issue the writ prayed for. *Walton* v. *Greenwood,* 60 Me. 356, 365. It does not appear that the Court of Common Pleas had done anything which was clearly in excess of its jurisdiction.

In the arrangement of courts in this State the reasons given apply with added force in the present case. The Court of Common Pleas, the Superior Court, and the judges of both, derive their power and jurisdiction from the same sovereignty. They are component parts in one judicial scheme, the whole being designed for the welfare and happiness of the people of the State. Such courts ought at all times to act with mutual respect for and forbearance towards each other. Each should act on the presumption that the other is desirous to exercise only its own proper jurisdiction. Between such courts jealousies would be unseemly; and any hasty or arbitrary exercise of authority would be inexcusable. The judge of the Superior Court seems to have acted on this theory.

There is no error.

In this opinion the other judges concurred.